UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x

HIGH POINT DESIGN LLC,

               Plaintiff,

        v.

BUYER'S DIRECT INC.,

               Defendant.

——————————————————

BUYER'S DIRECT INC.,

               Counterclaim Plaintiff/
               Third-Party Plaintiff,

        v.

HIGH POINT DESIGN LLC,

               Counterclaim Defendant,

MEIJER, INC., SEARS HOLDINGS
CORPORATION, AND WAL-MART STORES,
INC.,

               Third-Party Defendants.

——————————————————————x

Civil Action No. 11-CIV-4530-KBF

**MEMORANDUM OF LAW IN SUPPORT OF COMBINED MOTION BY PLAINTIFF/COUNTERCLAIM DEFENDANT AND BY THIRD-PARTY DEFENDANTS FOR (1) SUMMARY JUDGMENT WITH RESPECT TO PATENT VALIDITY AND INFRINGEMENT, PURSUANT TO RULE 56(b), F.R.C.P., AND (2) JUDGMENT ON THE PLEADINGS WITH RESPECT TO TRADE DRESS ALLEGATIONS, PURSUANT TO RULE 12(c), F.R.C.P.**

## **TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………..…..1

FACTS…………………………………………………………………………..…2

    The Parties and The Pleadings...…………………………………………...…2

    The Patent in Suit………………………………………………………….…3

    The Prior Art…………………………………………………………...…….4

    High Point's Accused Product……………………………….…………..6

    BDI's §43(a) Trade Dress Infringement Claim………………………….6


ARGUMENT………………………………………………………………...7

    I. High Point is Entitled to Summary Judgment with Respect to BDI's Patent

    Infringement Claim……..…………………………………………………..7

        A. The Standard for Summary Judgment...............................................7

        B. The Standards for Determining Patent Invalidity……………….……8

            1. The '183 Patent is Invalid for Obviousness………………….…9

            2. The '183 Patent is Invalid as Primarily Functional………...15

        C. The Scope of the '183 Patent is Narrow, Precluding

            Infringement…………………………………………………...16

    II. High Point is Entitled to Judgment on the Pleadings with Respect to BDI's

    Trade Dress Claim…………..……………………………………………...20

        A. The Applicable Legal Standard………………..……….………20

        B. BDI has Failed to Articulate the Features of Its Trade Dress....…...21

        C. BDI Cannot Prove that Its Trade Dress is Non-Functional…....…23


CONCLUSION…………………………………………………….…….…25

## <u>TABLE OF AUTHORITIES</u>

### <u>STATUTES</u>

15 U.S.C. §1125(a)…………..…………………………………………………....21

35 U.S.C. §103……………..….……………………………………...…..9, 12, 14

35 U.S.C. §171……………..…………………………………………….…8-9

35 U.S.C. §282……………..…………………………………………………….8

### <u>FEDERAL COURT RULES</u>

Fed. R. Civ. P. 12(c)…..…………………………………………………..20

Fed. R. Civ. P. 56(c)…..…………………………………………………7-8

### <u>CASES</u>

*Advanced Display Systems, Inc. v. Kent State University*, 212 F.3d 1272 (Fed. Cir. 2000)……………..…………………………………………………………....9

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)….…………………………7-8

*Arminak and Associates, Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314 (Fed. Cir. 2007), *cert. denied,* 553 U.S. 1102 (2008)…………..………………………..16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)………...……………………...…8

*Crocs, Inc. v. Int'l Trade Commission*, 598 F.3d 1294 (Fed. Cir. 2010)…..9, 11, 17-18

*Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996)...……9-11, 13

*Egyptian Goddess, Inc. v. Swisa*, 543 F.3d 665 (Fed. Cir. 2008), *cert. denied,* 556 U.S. 1167 (2009)…………………………………………………......10, 17, 19

*Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571 (Fed. Cir. 1995)………..……...…15, 17

*Famosa, Corp. v. Gaiam, Inc.*, (S.D.N.Y. February 22, 2012) (Forrest, J.), 2012 U.S. Dist. LEXIS 22437…………………………………..…………..…..…17

*Goodman v. Merrill Lynch & Co., Inc.*, 716 F.Supp.2d 253 (S.D.N.Y. 2010) (Scheindlin, J)…………..…………………………………………….20-21

*Henri Bendel, Inc. v. Sears, Roebuck and Co.*, 25 F.Supp.2d 198 (S.D.N.Y. 1998) (Chin, J.)……………………………………………………….….….23-24

*Heptagon Creations, Ltd. v. Core Group Marketing LLC*, 2011 U.S. Dist. LEXIS 147102 (S.D.N.Y. 2011) (Swain, J.)………………………………………….…….…24

*In re Haruna*, 249 F.3d 1327 (Fed. Cir 2001)…………………….………..……9

*In re Klein*, 987 F.2d 1569 (Fed. Cir. 1993)………………………………..…12

*Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233 (Fed. Cir. 2009)........................................................................................................9-10, 17

*Keep A Breast Found. v. Seven Group*, 2011 U.S. Dist. LEXIS 83004, 101 USPQ2d (BNA) 1384 (S.D. Cal. July 28, 2011)………………………….…….…...22-23

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007)…………………...……….14

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997)…...................................................................................................21-22

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 70 F.3d 251 (2d Cir. 1995)……………………………………………………...…….…...23

*Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238 (2011)…..…….....……...8-9

*National Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F.Supp.2d 556 (S.D.N.Y. 2009) (Buchwald, J.)……....…………………………….……..….22

*OddzOn Prods. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997)………......…15, 19

*Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123 (2d Cir. 2001)…..…20

*PHG Techs., LLC v. St. John Cos., Inc.*, 469 F.3d 1361 (Fed. Cir. 2006)……...……15

*Power Controls Corp. v. Hybrinetics, Inc.* 806 F.2d 234 (Fed. Cir. 1986)…..…....…15

*Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159 (1995)…………….……..…24

*Seirus Innovative Accessories, Inc. v. Cabela's Inc.*, 2011 U.S. Dist. LEXIS 145307 (S.D. Cal. October 25, 2011)…………………………………………....18

*Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389 (2d Cir. 2003)….21-23

*Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372 (Fed. Cir. 2009)…….8-10

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992)…………………..…......21

*Yurman Designs, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001)…………….…21, 24

Plaintiff/Counterclaim Defendant High Point Design LLC ("High Point") and Third-Party Defendants Meijer, Inc., Sears Holdings Corporation and Wal-Mart Stores, Inc. (collectively, "the Third-Party Defendants") respectfully submit this Memorandum of Law in support of their combined motion for (1) summary judgment, under Rule 56(b), F.R.C.P., that U.S. Design Patent D598,183 ("the '183 patent"), owned by Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Buyer's Direct Inc. ("BDI"), is invalid and/or is not infringed by any product marketed or sold by High Point and the Third-Party Defendants, and (2) judgment on the pleadings, pursuant to Rule 12(c), F.R.C.P., with respect to BDI's claims for trade dress infringement. The Declaration of Jeffrey M. Kaden, dated March 20, 2012, is also submitted in support of the present motion, as is a Rule 56.1 statement.

## INTRODUCTION

This is an action by High Point for a declaratory judgment that the '183 patent is not infringed, and that the '183 patent is invalid and/or unenforceable, in which BDI has counterclaimed for alleged infringement of the '183 patent and for related trade dress infringement, claiming that both the '183 patent and BDI's alleged trade dress rights have been infringed by a slipper product marketed and sold by High Point and re-sold by the Third-Party Defendants.

High Point contends[1] that, as a matter of law, the '183 patent is invalid as "obvious" in view of the available prior art, or that, at the very least, the available prior art renders the '183 patent so narrow or limited in scope that High Point's accused slipper product cannot possibly infringe that patent. There are no material facts in dispute, and a mere examination of the '183

---

[1] Unless explicitly specified, or unless otherwise indicated by context, all references to High Point hereinafter shall be understood as collective references to both High Point and the Third-Party Defendants.

patent and the available prior art is sufficient to establish that the patent is invalid for

obviousness and/or that no infringement is possible.  In addition, High Point contends that the

'183 patent is invalid for functionality.  Furthermore, a ruling is appropriate at this time that

BDI's trade dress claim is insufficiently pleaded, and/or that BDI cannot show that the alleged

trade dress in the configuration of BDI's product is non-functional, since these questions also

involve only issues of law, and High Point is therefore entitled to judgment on the pleadings with

respect to BDI's trade dress claim.

## FACTS

The factual allegations herein are taken from the pleadings, as well as public records of

prior art publications and patents, and from discovery of a non-party taken in this action, relating

to marketplace prior art that was available to the public.


**The Parties and The Pleadings**

High Point is a New York limited liability company, based in New York City, which is

primarily in the business of manufacturing and distributing hosiery (Complaint, ¶¶ 2-4).  BDI is a

North Carolina corporation, based in Wilson, North Carolina, and is a supplier of "retail

products" (Counterclaim, ¶¶ 4 and 9).

In a "cease and desist" letter dated June 22, 2011 (Kaden Declaration, ¶ 3 and Ex.1), BDI

asserted, through its counsel, that High Point had infringed the '183 patent by selling certain

slippers which were not identified with particularity in the text of the letter, but which were

identified by two photographs attached to the letter that appeared to depict a High Point slipper

product marketed commercially under the name "JACQUES MORET Fuzzy Babba Slipper

Socks" (the "Fuzzy Babba slipper").  High Point responded by denying those infringement

allegations and asserting that the '183 patent was invalid and/or not infringed (letter from High Point's counsel dated June 30, 2011, Kaden Declaration, ¶ 4 and Ex. 2). BDI maintained its infringement allegations in a reply letter from its counsel dated July 13, 2011 (Kaden Declaration, ¶ 5 and Ex. 3).

High Point filed its Complaint in this action against BDI on July 1, 2011, seeking a declaration from this Court that the '183 patent is not infringed, as well as a declaration that the '183 patent is invalid and/or unenforceable (Kaden Declaration, ¶ 6 and Ex. 4). On December 29, 2011, BDI filed and served its Answer, containing a counterclaim asserting infringement of the '183 patent as well as infringement of the allegedly protectable trade dress in BDI's commercially marketed slipper product known as its SNOOZIES slippers (Kaden Declaration, ¶ 7 and Ex. 5). BDI also filed a Third-Party Complaint (Kaden Declaration, ¶ 8 and Ex. 6), accusing the Third-Party Defendants of infringing the '183 patent, and of infringing BDI's trade dress as well, by virtue of the re-sale of Fuzzy Babba slippers which those parties had purchased from High Point.

**The Patent in Suit**

The '183 patent was granted on August 18, 2009 to inventor Marshall P. Bank and it was allegedly assigned by Mr. Bank to BDI (Counterclaim, ¶¶ 10 and 11). The '183 patent is entitled "Slipper," and it contains eight drawing figures, as well as a cover page that includes a short description of each figure, and a single claim which recites "the ornamental design for a slipper, as shown and described" (a complete copy of the '183 patent is attached to the Kaden Declaration as Exhibit 7). Thus, the '183 patent is directed to the ornamental configuration of the slipper that is depicted in its drawings.

The slipper design disclosed in the '183 patent is not particularly complicated from a technological standpoint; rather, the design appears to be quite simple, embodying a simple, furry slipper of the same type that is widely and readily available to consumers across the country. In general, the slipper includes an oval foot opening and a soft "fluffy" or fleece fabric which lines the interior, running to the interior rim of the foot opening, and which appears to "overflow" and run all the way around the outer rim of the foot opening as well.

When viewed from the side (Figures 4 and 5), a substantial portion of the bottom element remains visible, and the rim of the foot opening has a curved or arcuate shape. In addition, the fleece fabric is presented along the side rims of the foot opening. When the slipper is viewed from the top (see Figure 1), the fleece fabric seems to line the interior, and when the slipper is viewed from the rear, the same fleece fabric lining is also presented along the back rim of the foot opening (see Figure 3).

Moreover, the bottom element of the slipper includes a plurality of small circular dots, located on the surface of the slipper. These appear to be non-slip gripper dots, and they are arranged in two separate, discontinuous clusters, with the cluster on the sole portion presented in a specific non-rectangular pattern, and the cluster on the heel portion presented in a different non-rectangular pattern (see Figure 7). There is also a view of another embodiment of a slipper having a plain bottom, without any dots (see Figure 8).

**The Prior Art**

The eligible prior art includes a large number of slipper designs which are depicted in patents and in other publications, as well as slipper designs embodied in products which were commercially available to consumers in the United States (the latter is termed "marketplace prior

art"). In particular, the marketplace prior art includes two slipper products, known as the "Penta" slipper and the "Laurel Hill" slipper, both of which were sold in the United States by Woolrich, Inc. ("Woolrich") under the Woolrich brand name prior to 2008 (Woolrich Dep., pp. 38, 42, 54-57 and 69-70).[2] Photographs of the Woolrich slipper products are attached to the Kaden Declaration as Exhibits 9 and 12, and actual samples will be presented to the Court for consideration, as requested at the Initial Conference.

Both of these Woolrich slipper products were also depicted, marketed and offered for sale in printed Woolrich sales catalogs that were publicly distributed in the U.S. prior to the year 2008 (Woolrich Dep., pp. 143-144 and 147). Specifically, Woolrich produced a "Fall 2006" consumer catalog and a "Holiday 2006" consumer catalog (Kaden Declaration, ¶¶ 12, 13 and Exs. 10, 11), and in each of these two 2006 catalogs, the Penta slipper was shown and offered for sale on page 48 (Woolrich Dep., pp. 35 and 39). The Penta slipper was first offered for sale by Woolrich in late 2004 and was first sold by Woolrich during 2005 (Woolrich Dep., pp. 61-63). Sales of the Penta slipper also took place in 2006 and/or 2007 (Woolrich Dep., p. 38), and prior to the year 2008 (Woolrich Dep., pp. 69-70).

At some point, Woolrich introduced the Laurel Hill slipper to replace the Penta slipper (Woolrich Dep., p. 30). Woolrich also produced two "Fall 2007" consumer catalogs, as well as a "Late Fall 2007" consumer catalog and a "Holiday 2007" consumer catalog (Kaden Declaration, ¶¶ 15-18 and Exs. 13-16), and in all four of these 2007 catalogs, the Laurel Hill slipper was shown and offered for sale on page 54 (Woolrich Dep., pp. 40-41 and 43-46). The Laurel Hill slipper was first offered for sale by Woolrich in late 2006, and was first sold by Woolrich during

---

[2] The deposition of Woolrich, Inc. by its President, Nicholas Brayton, was taken on March 13, 2012 pursuant to F.R.C.P. 30(b)(6). References to "Woolrich Dep." followed by one or more page numbers are references to the transcript of that deposition. Copies of the referenced pages are attached to the Kaden Declaration as Exhibit 8. The Woolrich deposition became necessary after BDI refused to stipulate as to the authenticity of certain prior art Woolrich slipper products which are described herein.

2007 (Woolrich Dep., p. 65).  Sales of the Laurel Hill slipper took place prior to the year 2008 (Woolrich Dep., p. 70).

In addition to the marketplace and publication prior art originating from Woolrich, as described above, the available prior art also undoubtedly includes the earlier patents that were cited by the U.S. Patent Office during the prosecution of the patent application that matured into the '183 patent, and which are listed on the face of the '183 patent.  Among these are U.S. Patent Nos. D566,934 and D540,517  (Kaden Declaration, ¶¶ 19, 20 and Exs. 17, 18), both of which depict footwear that includes a pattern of small circular markings or dots, appearing on the bottom surface.

**High Point's Accused Product**

Photographs of the accused Fuzzy Babba slipper manufactured and sold by High Point are attached to the Kaden Declaration as Exhibit 19.  Actual samples of the Fuzzy Babba slippers will be presented to the Court for its consideration in deciding the present motion.  It should be noted that although the Fuzzy Babba slipper includes a plurality of non-slip or non-skid gripper dots on it bottom surface, those dots are presented in a regular rectangular 8 x 24 pattern which extends along the bottom element in a continuous fashion from the sole portion to the heel portion.

**BDI's §43(a) Trade Dress Infringement Claim**

In its counterclaim against High Point, and in its Complaint against the Third-Party Defendants, BDI alleges that its commercial "SNOOZIES" slippers "have a distinctive, immediately recognizable overall look and feel that constitutes protectable trade dress," and that

it has "invested significant time, money and effort in developing the SNOOZIES slipper products," resulting in "significant commercial success and public recognition of its distinctive design, appearance and trade dress" (Counterclaim, ¶¶ 25-26; Third-Party Complaint, ¶¶44-45). BDI also alleges that "the SNOOZIES trade dress has acquired secondary meaning in the marketplace as to the original [*sic*] of the product," and that the "trade dress of SNOOZIES is non-functional and ornamental" (Counterclaim, ¶¶ 27-28; Third-Party Complaint, ¶¶46-47). Based on these allegations, BDI asserts that certain "High Point Slippers" are "confusingly similar to the trade dress of SNOOZIES" in violation of 15 U.S.C. §1125(a), which is §43(a) of the Lanham Trademark Act (Counterclaim, ¶29; Third-Party Complaint, ¶48).

The allegations contained in paragraph 25 of the Counterclaim (which are mirrored in paragraph 44 of the Third-Party Complaint) constitute the only effort made by BDI even to attempt to identify and articulate the features of the trade dress from which its alleged rights might flow, and that effort is woefully inadequate.

## ARGUMENT

### I.    High Point is Entitled to Summary Judgment With Respect to BDI's Patent Infringement Claim

#### A.    The Standard for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment in favor of the moving party is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986).

Substantive law identifies which facts are critical and which facts are irrelevant; in other

words, a fact is material when, under governing substantive law, it could affect the outcome of the case. *Id.* at 248 (1986). An issue of fact is genuinely in dispute only if it can reasonably be resolved in favor of either party; however, the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Id.* at 247-248, 250-251.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party need not disprove matters on which the non-moving party will have the burden of proof at trial. *Id*, at 322. If the non-moving party is unable to demonstrate a prima facie case, summary judgment is warranted.

### B.    The Standards for Determining Patent Invalidity

A design patent may be granted for "any new, original, and ornamental design for an article of manufacture." 35 U.S.C. §171. Any duly issued patent, including a design patent, is presumed valid. 35 U.S.C. §282. However, the presumption of validity can be overcome by a showing of clear and convincing evidence of invalidity, *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238 (2011), and the party asserting that the patent is invalid has the ultimate burden of persuasion "as well as the initial burden of going forward with evidence to support its invalidity allegation." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).

Nevertheless, the presumption of validity can be severely weakened when pertinent prior art was not considered by the Patent Office in its review of the underlying patent application. In those instances, while the challenging party must still meet its burden with clear and convincing

evidence, it can become easier for the challenger to sustain that burden because of the

"commonsense principle" that "new evidence supporting an invalidity defense may 'carry more

weight' in an infringement action than evidence previously considered by the PTO." *Microsoft*,

131 S.Ct. at 2251.

> Simply put, if the PTO did not have all material facts before it, its considered
> judgment may lose significant force. And, concomitantly, the challenger's burden
> to persuade the jury of its invalidity defense by clear and convincing evidence
> may be easier to sustain.

*Id.* (citation omitted).

### 1.  The '183 Patent Is Invalid for Obviousness

A patent may not be issued if the subject matter of the invention "would have been

obvious at the time the invention was made to a person having ordinary skill in the art … ." 35

U.S.C. §103(a).  It is well settled that, pursuant to 35 U.S.C. §171, "[d]esign patents are subject

to the nonobviousness requirement of *35 U.S.C. § 103*.  *Titan Tire Corp., supra,* 566 F.3d 1372

at 1380.  *See Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233 at 1238 (Fed. Cir.

2009); *In re Haruna*, 249 F.3d 1327, 1335 (Fed. Cir 2001).

Obviousness is a question of law based on underlying factual inquiries including: (1) the

scope and content of the prior art; (2) the level or ordinary skill in the art; (3) the differences

between the prior art and the claimed invention; and (4) the extent of any objective indicia of

nonobviousness.  *See Crocs, Inc. v. Int'l Trade Commission*, 598 F.3d 1294, 1308 (Fed. Cir.

2010); *Advanced Display Systems, Inc. v. Kent State University*, 212 F.3d 1272, 1284-85 (Fed.

Cir. 2000).

However, in the design patent context, as the Court of Appeals for the Federal Circuit

explained in *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100 (Fed. Cir. 1996),

*distinguished on other grounds by Egyptian Goddess, Inc. v. Swisa*, 543 F.3d 665, 679 (Fed. Cir.

2008),

> the ultimate inquiry under *section 103* is whether the claimed design would have
> been obvious to a designer of ordinary skill who designs articles of the type
> involved. … More specifically, the inquiry is whether one of ordinary skill would
> have combined the teachings of the prior art to create the same overall visual
> appearance as the claimed design. …
>
> Before one can begin to combine prior art designs, however, one must find a
> single reference, "a something in existence, the design characteristics of which are
> basically the same as the claimed design." … Once this primary reference is
> found, other references may be used to modify it to create a design that has the
> same overall visual appearance as the claimed design. … These secondary
> references may only be used to modify the primary reference if they are "so
> related [to the primary reference] that the appearance of certain ornamental
> features in one would suggest the application of those features to the other." …

101 F.3d at 103 (bracketed alteration in original, and citations omitted).  As recently as 2009, the

Federal Circuit has confirmed that this is the proper obviousness analysis for a design patent.

*Titan Tire Corp., supra*, 566 F.3d  at 1381-82 and 1384.  Thus, for

> design patents, the role of one skilled in the art in the obviousness context lies
> only in determining whether to combine earlier references to arrive at a single
> piece of art for comparison with the potential design or to modify a single prior
> art reference.  Once that piece of prior art has been constructed, obviousness, like
> anticipation, requires application of the *ordinary observer test*, not the view of
> one skilled in the art.

*Int'l Seaway, supra*, 589 F.3d 1233 at 1240 (emphasis supplied).  The inquiry is whether a

designer of ordinary skill (who designs articles of the type involved) would have combined the

teachings of the prior art, and if so, whether to the *ordinary observer* the combination so created

would have the same overall visual appearance as the claimed design.  *Id.*

Therefore, the first step under *Durling* is to search the prior art for a primary reference,

and this "requires the trial court to: (1) discern the correct visual impression created by the

patented design as a whole; and (2) determine whether there is a single reference that creates

'basically the same' visual impression." *Id.* Such a primary reference may take the form of other patents, printed publications, or actual items of marketplace prior art which were in public use more than one year prior to the filing of the patent application that matured into the contested patent. In the present case, either the Woolrich Penta or Laurel Hill slippers (and/or the Woolrich catalogs featuring these products), can serve as the primary reference. Both of the Woolrich slippers, particularly the Penta slipper, create basically the same visual impression as that created by the design of the '183 patent as a whole. This court can make this determination "almost instinctively" (as the Federal Circuit noted approvingly in *Durling,* 101 F.3d at 103), that is, by direct visual inspection and without the need for any expert testimony.

In articulating the overall visual effect(s) created by the patented design, the court must not resort to excessive and misplaced reliance on a detailed verbal description of particular features of the design, which would distract the court from an examination of the design as a whole (*cf. Crocs*, 598 F.3d at 1302, where the Federal Circuit warned against such an approach in the context of an infringement analysis for a design patent). With this in mind, it is submitted that one of the overall effects created by the patented design is that of a slipper with rounded curves, in which the visual theme of rounded curves is also mirrored in the curvature and oval shape of the foot opening, as well as in the sloping curve that runs forward from the front of the foot opening to the toe of the slipper. Another overall effect of the patented design is the theme of comfort which is created by the extension of the fleece fabric inner lining over the top rim of the foot opening, such that it "overflows" to the exterior around the entire rim of the foot opening. Yet another overall effect is created by the presence of a bottom element having a thickness which is visible from all directions.

There can be no question that both of the Woolrich slippers, particularly the Penta

slipper, present these same overall effects and therefore create basically the same visual impression as at least one embodiment of the patented design, specifically the embodiment with no markings on its bottom surface (see Figure 8 of the '183 patent). As to this embodiment, the differences (if any) between the overall visual effect of either one of the Woolrich slippers, particularly the Penta slipper, and the overall visual effect of the patented design are minor. Therefore, based on the Woolrich slippers alone (that is, without any secondary references), this court can easily determine that at least one embodiment of the design of the '183 patent would have been obvious at the time the invention was made, particularly since, as can easily be determined from the face of the '183 patent, this Woolrich prior art was not considered by the U.S. Patent Office in its review of the patent application which led to the '183 patent.

The Federal Circuit has stated that if the single claim of a design patent covers more than one embodiment, and if the prior art demonstrates the obviousness of any one of those embodiments, then the claim itself can properly be rejected, and therefore would not be patentable, for obviousness under 35 U.S.C. §103, even if the claim encompasses other embodiments. *See In re Klein*, 987 F.2d 1569, 1570 (Fed. Cir. 1993) ("The board correctly stated that the single claim [of a design patent] covers plural alternative embodiments and that the *§ 103* rejection is proper if the prior art demonstrates the obviousness of any one of them…"). Thus, this court can rely on the Woolrich slippers alone to conclude that the claim of the '183 patent is invalid. However, even if the obviousness of *one* embodiment alone is not enough to invalidate the claim of the '183 patent, the prior art amply demonstrates, as will be shown below, the obviousness of the other embodiment of that patent.

The embodiment depicted in Figures 1-7 of the '183 patent includes dots located on the surface that would most commonly come in contact with the floor (see Figure 7), which are

- 12 -

absent from the other embodiment (*cf.* Figure 8). These dots create yet another overall effect or visual impression for the claimed ornamental features of the patented design. Neither of the Woolrich slippers includes such a feature. Nevertheless, the next step in the *Durling* analysis is for this court to determine whether the primary reference(s) may be modified by other, secondary references to yield a combination having the same overall visual effect as the embodiment of the patented design under discussion.

Initially, the court must determine whether the proffered secondary references are "so related" to the primary reference(s) that the appearance of a certain feature in one would suggest, to one of ordinary skill in the art, the use of that same feature in the other. In this case, it can hardly be disputed that U.S. Patent No. D566,934 and U.S. Patent No. D540,517, both of which are directed to footwear, are so related to the Woolrich prior art that the use of a particular feature in one (or both) of those prior art design patents would suggest the use of that same feature in either one of the Woolrich slippers. After all, as can easily be determined from the face of the '183 patent, both U.S. Patent No. D566,934 and U.S. Patent No. D540,517 *were* considered by the U.S. Patent Office before it granted the '183 patent, and thus they are clearly from the same field of endeavor.

Accordingly, the use of a feature shown in U.S. Patent No. D566,934 and/or U.S. Patent No. D540,517 would have been suggested to a designer of ordinary skill in the slipper art, and therefore either one of these secondary references can be used to modify one (or both) of the Woolrich slippers to create a design that presents the same visual impression as the embodiment of Figures 1-7 of the patented design. As noted above, the prior art Woolrich Penta slipper and Laurel Hill slipper lack the ornamental markings or "dots" on the bottom surface, presented in two discrete, discontinuous clusters, one in the heel area and the other in the sole area. This

feature, however, is clearly shown in both U.S. Patent No. D566,934 and U.S. Patent No. D540,517, and the question is whether it would have been obvious to one of ordinary skill in the art that the overall visual effect of the embodiment of Figures 1-7 of the '183 patent could be achieved simply by combining the "dot cluster" feature of either U.S. Patent No. D566,934 or U.S. Patent No. D540,517 with the features of one of the Woolrich slippers.

This court can easily conclude instinctively, that is, by direct visual inspection and without the need for any expert testimony, that it would have been patently obvious to a slipper designer of ordinary skill, who wanted to create the overall effect or visual impression of the embodiment of Figures 1-7 of the '183 patent, to use the design features of the Woolrich Penta slipper or the Woolrich Laurel Hill slipper, and to combine either one of them with the circular markings or dots shown in either U.S. Patent No. D566,934 or U.S. Patent No. D540,517, such that, to the ordinary observer, the combination thus created would present much the same visual impression as that presented by the embodiment of Figures 1-7 of the '183 patent. The motivation to combine these elements in order to create the same overall visual appearance may be found implicitly in the prior art itself, since "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 420 (2007).

Accordingly, the prior art renders obvious *both* of the embodiments disclosed in the '183 patent's drawings, and therefore the claim of the '183 patent is invalid under 35 U.S.C. §103. In light of all of the foregoing, it is submitted that High Point has amply met the burden of going forward with evidence of invalidity.[3]

---

[3] It should be noted that all of the elements which BDI itself has asserted are the "features" that make the '183 patent unique are shown in the prior art. In *Buyer's Direct, Inc. v. Belk, Inc. and Belk Int'l, Inc.*, 10-CV-0065, which is pending in the U.S. District Court for the Eastern District of North Carolina, Western Division, BDI is also alleging infringement of the '183 patent. In the report of BDI's expert, Lance Rake,

### 2. The '183 Patent is Invalid as Primarily Functional

"A design patent only protects the novel, ornamental features of the patented design," not the functional elements. *OddzOn Prods. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) ("A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent."). The claimed design need not be dictated *solely* by function. A design patent is invalid when it "is *primarily* functional rather than ornamental." *PHG Techs., LLC v. St. John Cos., Inc.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006) (emphasis supplied). "In determining whether a design is primarily functional, the purposes of the particular elements of the design necessarily must be considered." *Power Controls Corp. v. Hybrinetics, Inc.* 806 F.2d 234, 240 (Fed. Cir. 1986).

In the case at bar, it can hardly be disputed that the design which is the subject of the '183 patent is composed mainly of non-ornamental, functional elements. Each element of the design has a clear purpose, which the court can determine from a direct visual inspection of the drawings of the '183 patent. First, the overall shape and profile of the slipper design closely parallels the shape and profile of a human foot. Second, the oval foot opening facilitates the introduction and withdrawal of a foot into/from the slipper. Third, the fleece fabric lining on the interior of the slipper, and its extension (or "overflow") to the exterior rim of the foot opening, provides an additional degree of comfort and enhances the warmth of the slipper. Fourth, the circular dots, located on the bottom surface of the slipper enhance friction, and augments the

---

dated January 17, 2012 and filed in that litigation, a copy of which is attached to the Kaden Declaration as Exhibit 20, BDI asserts that these features are (1) a smooth, unbroken surface that defines the upper body, (2) one vertical seam placed at the center of the heel, (3) a seam line that runs unbroken around the circumference of the bottom, (4) the size, shape and relative location of the fleece-lined foot opening, and (5) the design of the sole with or without the added ornamentation of a pattern of dots (Rake Report, ¶¶ 32-34). Each and every one of these features, as described by Rake, is also found in the Woolrich slipper products, particularly the Penta product, except for the pattern of dots, which is found in U.S. Patent Nos. D566,934 and/or D540,517.

non-slip characteristics of the slipper.  These elements are functional, rather than purely

ornamental, and the primarily functional nature of the design of the '183 patent is also

demonstrated by the absence of any purely ornamental or decorative features, such as floral

illustrations or even abstract formations on the sides, back or top surfaces.

"The chief limitation on the patentability of designs is that they must be primarily

ornamental in character.  If the design is dictated by performance of the article, then it is judged

to be functional and ineligible for design patent protection." *Arminak and Associates, Inc. v.*

*Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1319 (Fed. Cir. 2007), *cert. denied,* 553 U.S. 1102

(2008).  Any aesthetic appeal of the design of the '183 patent is the inevitable result of its

functional concerns.  This court has an ample basis on which to conclude that the '183 patent is

invalid as primarily functional, and summary judgment is warranted on this ground as well.[4]

### C.    The Scope of the '183 Patent is Narrow, Precluding Infringement

Even if the '183 patent is not invalid based upon the eligible prior art, that prior art is so

---

[4] Another federal district court has already scrutinized the '183 patent and has expressed reservations
about the patent's validity.  In BDI's North Carolina action against Belk, BDI sought a preliminary
injunction on its patent claim, and in a Memorandum and Recommendation dated April 1, 2011,
Magistrate Judge David Daniel found as follows:

> The '183 Patent drawings depict a rather generic slipper while purporting to claim an
> "ornamental design." The Court finds there to be at least some merit in [defendant's]
> argument that many of the depicted slipper's features-such as a fluffy lining, oval foot
> opening, or the mere existence of non-slip dots may be functional elements which cannot
> be patented as part of an ornamental design. (Internal citations omitted.)
>
> * * *
>
> [T]he Court is also inclined to give weight to [defendant's] arguments that the '183 Patent
> is invalid because it is violative of the prior art and/or impermissibly indefinite, and does
> not find that BDI has *clearly* shown that the '183 Patent is likely to withstand a validity
> challenge.

(emphasis in original).  A complete copy of Magistrate Daniel's Memorandum and Recommendation is
attached to the Kaden Declaration as Exhibit 21.

close to the claimed design that it nevertheless limits the scope of protection to which the '183 patent is entitled, such that High Point's Fuzzy Babba slipper product cannot infringe the patent as a matter of law.  Alternatively, even if the '183 patent is not invalid as primarily functional, the functional elements of the claimed design nevertheless narrow the scope of protection, and High Point's Fuzzy Babba slipper cannot infringe as a matter of law.

A determination of design patent infringement requires a two-step analysis.  First, the claim must be properly construed to ascertain its scope and meaning, and second, the claim, as so construed, must be compared to the accused product.  *Elmer v. ICC Fabricating, supra*, 67 F.3d 1571 at 1577.  The latter comparison requires a determination that an ordinary observer, familiar with the prior art designs, would be deceived into believing the accused product is the same as the patented design.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008), *cert. denied,* 556 U.S. 1167 (2009).  The ordinary observer must "view the differences between the patented design and the accused product in the context of the prior art" such that "the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Id*. at 676.  The "ordinary observer is deemed to view the differences between the patented design and the accused product *in the context of the prior art*." *Id.  Accord, Int'l Seaway*, *supra*, 589 F.3d 1233, at 1239-40.  Thus, the infringement determination is made in light of the prior art and not in a vacuum, and this court can make that determination on its own, using an "ordinary observer" comparison, without the need for expert testimony or other evidence.  *See Famosa, Corp. v. Gaiam, Inc.*, (S.D.N.Y. February 22, 2012) (Forrest, J.), 2012 U.S. Dist. LEXIS 22437, at *10.

According to the Federal Circuit, once the prior art is considered, the hypothetical ordinary observer becomes more capable of distinguishing between the patented design and the

accused product.  As stated in *Crocs*, *supra*,

> When the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art.  If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer.

598 F.3d at 1303 (citations omitted).

Therefore, in determining whether any infringement of the '183 patent is possible, this court must take into account the prior art Woolrich Penta slipper and/or the prior art Woolrich Laurel Hill slipper (and/or the Woolrich catalogs featuring those slipper products), as well as U.S. Patent Nos. D566,934 and D540,517.   The claimed design is quite close to this prior art. Most of the design features shown in the '183 patent are also shown in the prior art, and the differences from the prior art, if any, are so limited that the scope of protection afforded to that patent must necessarily be extraordinarily narrow.

In *Seirus Innovative Accessories, Inc. v. Cabela's Inc.*, 2011 U.S. Dist. LEXIS 145307 (S.D. Cal. October 25, 2011), the district court granted the defendants' motion for summary judgment of non-infringement because the scope of the claim of the plaintiff's design patent (which concerned a design for a neck protector) was limited to the drawing figures that depicted a neck protector with a *vertical* zipper due to a prior art patent that disclosed a similar neck garment with an *angled* zipper, and therefore the accused product, which had a *diagonal* zipper, was held to be non-infringing.

In the case at bar, since the prior art contains the Woolrich slippers as well as two prior art patents disclosing footwear having circular markings or dots on both the heel portion and the sole portion of the bottom surface, the scope of the '183 patent must similarly be limited, in this case to a slipper having the particular configuration of dots shown in Figure 7 of the drawings,

*i.e.*, with the dots arranged in two separate, discontinuous clusters, with the cluster on the sole portion presented in a particular non-rectangular pattern, and the cluster on the heel portion presented in a different particular non-rectangular pattern.  Since High Point's accused Fuzzy Babba slipper does not carry such a configuration of dots, but instead carries a regular rectangular pattern of dots which extends along the bottom element in a continuous fashion from the sole portion to the heel portion, and since, in light of the prior art, this difference would be likely to assume more importance to the hypothetical ordinary observer, the Fuzzy Babba slipper cannot infringe the claim of the '183 patent as a matter of law.

Alternatively, since a design patent protects only the nonfunctional features of the patented design, *OddzOn Prods.*, *supra*, it has been held that where a design contains both functional and nonfunctional elements, such as in the case at bar, the infringement inquiry requires that the scope of the claim be construed so as to identify the ornamental (*i.e.*, non-functional) aspects of the design, *Egyptian Goddess*, 543 F.3d at 680, and that the ordinary observer be deceived by the features that are common to the claimed and accused designs that are nonfunctional and ornamental.  *Id.*

Here, as set forth above, there are numerous aspects of the design that is the subject of the '183 patent that are functional, and very few, if any, that are purely ornamental.  While there is no doubt that the inclusion of non-skid dots on the bottom of the slipper is a functional aspect of the claimed design, the exact number and precise configuration of those dots, in each separate cluster, as shown in Figure 7 of the '183 patent, is the only feature that could perhaps be considered non-functional.  But again, since High Point's accused Fuzzy Babba slipper does not have separate clusters of dots, and does not the same number and configuration of dots, this court can conclude as a matter of law that there are no purely ornamental features that the claimed and

accused designs have in common, and that the only features that the accused and claimed designs

do have in common are purely functional. Therefore an ordinary observer could not be deceived

and accordingly, summary judgment of non-infringement is appropriate and should be granted.

## II.    High Point is Entitled to Judgment on<br>The Pleadings With Respect to BDI's Trade Dress Claim

### A.    The Applicable Legal Standard

Judgment on the pleadings, requiring dismissal of a claim, should be granted under Rule

12(c) of the Federal Rules of Civil Procedure when the pleading does not set forth sufficient facts

to entitle the claimant to relief.

> The standard for granting a Rule 12(c) motion for judgment on the pleadings is
> identical to that of a Rule 12(b)(6) motion for failure to state a claim. *Irish
> Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998); *Sheppard v.
> Beerman,* 18 F.3d 147, 150 (2d Cir.1994); *Ad-Hoc Comm. of Baruch Black &
> Hispanic Alumni Ass'n v. Bernard M. Baruch Coll.,* 835 F.2d 980, 982 (2d
> Cir.1987). In both postures, the district court must accept all allegations in the
> complaint as true and draw all inferences in the non-moving party's favor. *Irish
> Lesbian & Gay Org.,* 143 F.3d at 644. The court will not dismiss the case unless it
> is satisfied that the complaint cannot state any set of facts that would entitle him
> to relief. *Sheppard,* 18 F.3d at 150.

*Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

This court has explained that "[u]nder *Rule 12(c)*, after the pleadings close, but before the

trial begins, a party may move for judgment on the pleadings, provided that the motion is made

early enough so as not to delay the trial." *Goodman v. Merrill Lynch & Co., Inc.*, 716 F.Supp.2d

253, at 258 (S.D.N.Y. 2010) (Scheindlin, J).

> Judgment on the pleadings should be granted if it is clear from the pleadings that
> the moving party is entitled to judgment as a matter of law. In evaluating a
> motion for judgment on the pleadings, the court applies the same standard as that
> applicable to *Rule 12(b)(6)* motions to dismiss for failure to state a claim. As in
> the context of a motion to dismiss, the court "must accept as true all of the factual
> allegations contained in the complaint" and "draw all reasonable inferences in the

plaintiff's favor." However, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness."

*Id.*, at 258-259 (citations omitted).

In the present action, this motion is clearly timely, and even accepting as true all of the factual allegations contained in BDI's trade dress pleading, and drawing all reasonable inferences in BDI's favor, High Point is entitled to judgment as a matter of law because BDI's pleading is wholly insufficient.

**B.**    **BDI Has Failed to Articulate the Features of Its Trade Dress**

High Point is entitled to judgment on the pleadings with respect to BDI's allegations of trade dress infringement because BDI has failed to articulate, either in its Counterclaim or in its Third-Party Complaint, the specific features of its SNOOZIES slippers that constitute its trade dress, as required by Second Circuit case law.

Although Section 43(a) of the Lanham Trademark Act (15 U.S.C. §1125(a)) provides a private cause of action for infringement of an unregistered trademark, and although that protection also extends to "trade dress," *see Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992), the Second Circuit requires that a party asserting trade dress rights in the appearance or configuration of a product must (1) "offer 'a precise expression of the character and scope of the claimed trade dress'"; (2) allege that "the claimed trade dress is non-functional"; (3) allege that "the claimed trade dress has secondary meaning"; and (4) allege that "there is a likelihood of confusion between the plaintiff's good [*sic*] and the defendant's." *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389, 391 (2d Cir. 2003) (*quoting Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997); and *citing Yurman Designs, Inc. v.*

*PAJ, Inc.*, 262 F.3d 101, 115-16 (2d Cir. 2001)).

In *Sherwood*, although the trade dress claimants were able to meet requirements (2)-(4), they were unable to meet requirement (1), and the same is true of BDI's trade dress claim in the present action.  In *Sherwood*, the plaintiffs described their trade dress rights in their pleading as "the unique configuration and ornamentation of" three office buildings located in and around Times Square in New York City, and the "advertising and signage display on" those three buildings, but this description was held to be inadequate because it did not identify the purportedly protectable trade dress with precision.  76 Fed. Appx. at 391.  In other words, the plaintiffs had failed "to identify *the specific elements* that comprise each building's identifiable trade dress."  *Id*. (emphasis supplied).

It is not permissible for a plaintiff to "dispense with an articulation of the specific elements which comprise its distinct dress" and to side-step this requirement by focusing merely on the overall look of a product.  *Id., quoting Landscape Forms*, 113 F.3d at 381.  A "vague and overbroad articulation of the trade dress elements" is considered to be a "basic defect in the [plaintiffs'] pleadings" which "cannot be cured."  *Sherwood*, 76 Fed. Appx. at 391.  Furthermore, and as this court stated more recently, a "conclusory reliance on the 'entire look of a product' does not fulfill the plaintiff's obligation to offer a 'precise explanation of the character and scope of the claimed trade dress' under *Sherwood* and *Landscape Forms*."  *National Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F.Supp.2d 556, 562 (S.D.N.Y. 2009) (Buchwald, J.).

In *National Lighting*, the court also stated that it is not sufficient merely to provide a "laundry list of the elements that constitute" the trade dress; rather, the plaintiff must provide "a description of which of plaintiff's trade dress elements are distinctive and how they are distinctive."  *Id*.  And in *Keep A Breast Found. v. Seven Group*, 2011 U.S. Dist. LEXIS 83004, at

*5, 101 USPQ2d (BNA) 1384, 1386 (S.D. Cal. July 28, 2011), the Court stated:

> Here, Plaintiff alleges only that "the Defendants have adopted the overall look and feel of products being sold bearing [Plaintiff's] Trademarks." (Compl. ¶ 5.) Plaintiff does not describe, or even list, the elements that compose the "overall look and feel" of its products.  Defendants have not been sufficiently put on notice of the trade dress at issue.

In the case at bar, BDI's only allegation concerning the nature of its trade dress is devoid of detail.  BDI simply alleges that its commercial "SNOOZIES" slippers "have a distinctive, immediately recognizable *overall look and feel* that constitutes protectable trade dress" (Counterclaim, ¶ 25, and Third-Party Complaint, ¶44, emphasis supplied).  As the authorities cited above make clear, this bare allegation is utterly insufficient.  Not only has BDI failed to provide a description of which of its trade dress elements are distinctive and how they are distinctive, but BDI has not even provided a list of the specific elements or features of its "SNOOZIES" slippers which constitute its trade dress.  As a result, High Point has not been put adequately on notice, and BDI's complete failure to articulate the features of its purported trade dress is a basic defect in BDI's pleading which cannot be cured at this stage of the litigation.  *Sherwood*, 76 Fed. Appx. at 391.


### C.    BDI Cannot Prove That its Trade Dress is Non-Functional

In the alternative, High Point is entitled to judgment on the pleadings with respect to BDI's trade dress infringement allegations because BDI cannot meet its burden of showing that its trade dress is not functional.

Under Section 43(a), a defendant is not liable for trade dress infringement if the trade dress at issue is functional.  *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 70 F.3d 251, 253 (2d Cir. 1995).  In *Henri Bendel, Inc. v. Sears, Roebuck and Co.*, 25 F.Supp.2d 198, 201-202

(S.D.N.Y. 1998) (Chin, J.), this court defined functionality as a "quality essential to [a] product's purpose" (citations omitted), and went on to state that the functionality doctrine "prevents trademark law, which seeks to promote competition by protecting a firms's [*sic*] reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature" (*quoting Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995)). In *Bendel*, the court ruled that the trade dress was functional because there were only a limited number of designs available for cosmetic bags, and the claimed features – vertical stripes, plastic coating and gold zipper pulls – must remain available to competitors.

Similarly, in *Heptagon Creations, Ltd. v. Core Group Marketing LLC*, 2011 U.S. Dist. LEXIS 147102, at *20 (S.D.N.Y. 2011) (Swain, J.), this court stated that "a product feature is functional … if it is essential to the use or purpose of the article or if it affects the cost or quality of the article" (*quoting Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 at 116 (2d Cir. 2001)). In *Heptagon*, the plaintiff claimed trade dress rights in each individual chair included in a line of chair products, but the court ruled that the alleged trade dress could not be separated from the traditional functionality of the various chair parts (seat, backing, legs, etc.).

Common sense indisputably indicates that BDI will be unable to prove that its alleged trade dress is non-functional for the same reasons as set forth above in connection with the arguments concerning the invalidity of the '183 patent as being primarily functional. Specifically, the alleged trade dress in the "SNOOZIES" slippers cannot be separated from the traditional functionality of the various features of those slippers, namely, (1) the overall shape or profile of BDI's "SNOOZIES" slipper, which mimics that of the human foot and best accommodates that part of the human anatomy, (2) the oval shape of the foot opening, which best facilitates the ingress and egress of the foot, (3) the fleece fabric lining, which promotes

wearer comfort as well as warmth, and (4) the dots on the bottom surface of the slipper, which help to increase friction, thereby preventing the wearer from slipping or skidding on a smooth, non-carpeted floor surface.[5]

BDI will be unable to show that these useful slipper product features are non-functional because, as a matter of law, the functionality doctrine demands that BDI not be allowed to control them; rather, they must remain available to all competitors to use.  High Point is entitled to judgment on the pleadings, and BDI's trade dress claim should be dismissed.


## CONCLUSION

For all of the foregoing reasons, the motions of High Point for summary judgment with respect to BDI's design patent claims, and for judgment on the pleadings with respect to BDI's trade dress claims, should be granted.


Respectfully submitted,

HIGH POINT DESIGN LLC, MEIJER, INC.,
SEARS HOLDINGS CORPORATION, AND
WAL-MART STORES, INC.


By: /s/Jeffrey Kaden/

GOTTLIEB, RACKMAN & REISMAN, P.C.
270 Madison Avenue, 8th Floor
New York, NY 10016
(212) 684-3900
Jeffrey M. Kaden (JK 2632)
Steven Stern (SS 5203)
Dated:  March 20, 2012                    David S. Kashman (DK 3039)

---

[5] On its own web site, BDI itself even admits that many of these features of its commercial "SNOOZIES" product are functional, by emphasizing the warm, cozy comfort provided by the fleece lining, as well as the non-slip gripper dots. (Kaden Declaration, ¶ 24 and Ex. 22).