```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAY 15 2012
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  :
HIGH POINT DESIGN LLC,            :
                                  :
                     Plaintiff,   :    11 Civ. 4530 (KBF)
                                  :
          -v-                     :    MEMORANDUM & ORDER
                                  :
BUYER'S DIRECT, INC.,             :
                     Defendant.   :
                                  :
--------------------------------- X
                                  :
BUYER'S DIRECT, INC.,             :
                                  :
        Counterclaim Plaintiff/   :
        Third Party Plaintiff,    :
                                  :
        -v-                       :
                                  :
HIGH POINT DESIGN LLC,            :
                                  :
        Counterclaim Defendant,   :
                                  :
MEIJER, INC., SEARS HOLDINGS      :
CORPORATION, AND WAL-MART STORES, :
INC.,                             :
                                  :
        Third Party Defendants.   :
----------------------------------X

KATHERINE B. FORREST, District Judge:

     This is a case about whether a design patent for fuzzy

slippers is valid and enforceable--and therefore whether

plaintiff High Point Design LLC ("High Point") and third party

defendants Meijer, Inc., Sears Holding Corporation, and Wal-Mart

Stores, Inc. (the "third party defendants") may be held liable

for infringement.  As set forth below, the answer to both questions is "no."

On July 1, 2011, High Point brought a two-count action against defendant Buyer's Direct, Inc. ("Buyer's Direct") for declarations that High Point's particular version of fuzzy slippers do not infringe the design patent owned by defendants and that such patent is, in any event, invalid and unenforceable.  (Dkt. No. 1.)  Buyer's Direct responded with a two-count counterclaim for patent and trade dress infringement, and joined as third party defendants three retailers--Meijer, Inc., Sears Holdings Corporation and Wal-Mart Stores, Inc.--to (and through) whom plaintiff is alleged to sell its slippers (Dkt. No. 13.)

After a period of discovery, plaintiff and third party defendants (collectively referred to herein as "Movants") have now moved for summary judgment.  Movants contend that Buyer's Direct's design for fuzzy slippers is invalid as a matter of law--i.e., that the design is both obvious and merely functional.  Separately, Movants seek judgment on the pleadings as to Buyer's Direct's trade dress counterclaim.

This Court has carefully examined Buyer's Direct's patent--Patent No. D598,183S (the "'183 patent")--and finds that it is both obvious as against the prior art--at the end of the day it is a rather run-of-the-mill fuzzy slipper--and in all events,

its features are merely functional.  The face of the patent
itself leaves no doubt that there is nothing ornamental about
the slippers.

Accordingly, plaintiff and third-party defendants' motion
for summary judgment is GRANTED.

In addition, this Court finds that defendant's counterclaim
and third party claim for trade dress infringement is conclusory
and fails to meet the minimal requirements for claims of this
sort.  Given the late stage of these proceedings, this Court
dismisses that claim with prejudice.

On the basis that Buyer's Direct's other counterclaim is
for a declaration of infringement of the '183 patent by High
Point and the Court finds the '183 patent invalid, Buyer's
Direct's remaining counterclaim is rendered moot.  This action
is therefore dismissed in its entirety.

I. FACTS

No one can seriously doubt that slippers with an opening
for a foot that contain a fuzzy (fleece) lining and have a
smooth outer surface have been around for years.  Indeed, the
Court assumes that many readers of this opinion have had the
experience of having placed their own foot in such a slipper.

Nevertheless, in January 2009, Buyer's Direct applied for a
design patent that appears to look like many slippers that are
widely available.  The Patent and Trademark Office ("PTO"),

perhaps not being as familiar with slippers as some, saw fit to issue the patent on August 18, 2009, as Patent No. D598,183S. The '183 patent references nine pieces of prior art dating back to 1942. That comparatively limited list of prior art is itself somewhat surprising given how ubiquitous similar fuzzy slippers are in retail stores. It is suggestive of an absence by slipper manufacturers of a need or desire for exclusive design rights, or an assumption that such exclusivity could not reasonably be sought, let alone obtained, given the similarity and proliferation of many designs.

The '183 patent is unremarkably entitled "slipper." It consists of a single claim: "The ornamental design for a slipper, as shown and described." The slipper shown has a smooth exterior with a fuzzy interior. To the ordinary observer (about which more shall be said in a moment), it looks like many slippers that I purchased and wore throughout my youth some time ago--and certainly before 2009. Put another way, and as discussed further below, there does not appear to be anything ornamental about the design shown in the '183 patent at all.[1]

Among the individuals deposed in this action was Richard Brayton, President of Woolrich, Inc., the consumer apparel

---

[1] As discussed below, the critical legal basis for disposing of this matter rests not on the Court's anecdotal memories and assumptions of common sense obviousness, but rather on the facts relating to prior art available in the marketplace prior to the time that Buyer's Direct even applied for the '183 patent.

company.  (See Decl. of Jeffrey M. Kaden ("Kaden Decl.") (Dkt.
No. 34) Ex. 8 (Braden Dep. Tr.).)  Brayton testified that
Woolrich had two slippers that Woolrich began to market in the
United States in 2006 and that bear striking similarities to the
design of the '183 Patent: Woolrich's "Penta" and "Laurel Hill"
slippers.  Woolrich's Penta slipper was marked at Exhibit 7A to
Brayton's deposition and he identified it as a slipper that his
company had designed in 2004 and had been selling to the public
since 2005.  (The Court returns below to the fact that this
Penta slipper looks indistinguishable from the drawing shown in
the '183 Patent.)

     Brayton's testimony was confirmed by his authentication of
advertisements for sale for the Penta slipper in at least two
2006 Woolrich catalogues (Kaden Decl. Exs. 10, 11 (also marked
as Brayton Dep. Exs. 6, 8)), the catalogue price is denominated
in U.S. dollars and bears a mailing address to an individual in
New York State, making clear (as Brayton so testified) that the
slipper was offered for sale in the United States since that
time.  Brayton confirmed U.S. sales in his deposition testimony.

     In addition, Brayton testified that Woolrich continued to
advertise and sell the Penta slipper in catalogues throughout
2007 (Kaden Decl. Exs. 13-16 (marked as Brayton Dep. Exs. 9, 11-
13)), and that the Penta was also offered for sale in 2008 and
2009.

The Penta slipper was joined by another fuzzy slipper that Woolrich designed in 2006 and started to sell in 2007 called the "Laurel Hill" slipper.  Brayton identified the Laurel Hill slipper as Exhibit 10-A at his deposition.  That slipper again, while having certain differences with the Penta slipper that are insubstantial and might be referred to as streamlining, nonetheless has the precise look that an ordinary observer would think of as a physical embodiment of the drawings shown on the '183 Patent.  Brayton testified that but for some minor changes, the slippers are in fact the same.  (Kaden Decl. Ex. 8 at 57 ("I would say it's essentially the same slipper.").)

After 2007, the Laurel Hill slipper became part of a line of footwear sold by the Sierra Trading Post and that it is currently for sale through that line and retailer.

Among the prior art cited in the '183 patent are U.S. Patent Nos. D566,934 and D540,517.  (Kaden Decl. Exs. 17-18.) Each of those design patents depicts slippers with a pattern of small dots on the bottom surface.  (Id.)

High Point does not make a slipper that so closely resembles the drawings shown on the face of the '183 patent as the Penta and Laurel Hill slippers.  High Point's slipper is marketed commercially under the name "JAQUES MORET Fuzzy Babba Slipper Socks."  (Kaden Decl. Ex. 19.)  A photograph of that slipper shows a slipper that quickly stands out due to its

6

large, colorful round "dots" or "balls" that are imprinted on the top and bottom surfaces of the slipper. (Id.) An ordinary observer would describe it as looking "floppy"--hence, the unsurprising description of it as a "Slipper Sock." High Point does not contest that it sells its slipper commercially in the United States.

Third party defendants do not contest that they sell High Point's slipper, and thus, they join in each of High Point's arguments regarding the '183 patent invalidity.

In terms of its trade dress claim, Buyer's Direct asserts that the slippers sold via the '183 patent, sold under the commercial name "Snoozies," "have a distinctive and recognizable overall look and feel that constitutes protectable trade dress." (Countercl. (Dkt. No. 13) ¶¶ 25-26.) Buyer's Direct also contends that Snoozies have acquired secondary meaning in the marketplace and that the trade dress is non-functional and ornamental. (Id. ¶¶ 27-28.)

DISCUSSION

I.   STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court must determine whether there are material disputes of fact that must be resolved by a trier of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). If the party opposing a summary judgment motion does not raise a triable issue of fact, the

7

movant is entitled to judgment as a matter of law.  Fed. R. Civ.
P. 56; Celotex, 477 U.S. at 324.  The Court must construe the
facts and draw all reasonable inferences in favor of the non-
moving party.  McClellan v. Smith, 439 F.3d 137, 144 (2d Cir.
2006).  To demonstrate the existence of a material, disputed
issue of fact, the non-movant must do more than rely upon
conclusory allegations or speculation--i.e., it "must offer some
hard evidence showing that its version of events is not wholly
fanciful."  D'Amico v. City of New York, 132 F.3d 145, 149 (2d
Cir. 1998).  "If the evidence is merely colorable, or is not
significantly probative, summary judgment may be granted."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

II. RELEVANT PATENT LAW PRINCIPLES

    A.   Presumption of Validity

    The patent laws provide that a design patent may be granted
for "any new, original, and ornamental design for an article of
manufacture."  35 U.S.C. § 171.  As with any patent, once it has
been issued, a design patent carries a presumption of validity
that can generally only be overcome only by a showing of clear
and convincing evidence.  See 35 U.S.C. § 282; Microsoft v. i4i
Ltd. P'ship, 131 S. Ct. 2238, 2245 (2011).  However, if at the
time that the PTO was reviewing a patent application, it did not
have before it certain prior art (which, as discussed below, was
the case here with respect to the Woolrich slippers), its

judgment may lose significant force and a challenger's burden may be easier to sustain.  <u>i4i Ltd. P'ship</u>, 131 S. Ct. at 2251.

B.   Obviousness

One defense to patent validity is that the patent "would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a).  There is no exception to that rule for design patents.  <u>Titan Tire Corp. v. Case New Holland, Inc.</u>, 566 F.3d 1372, 1384 (Fed. Cir. 2009).

Whether or not an invention is "obvious" is a question of law.  <u>See Crocs, Inc. v. Int'l Trade Commission</u>, 598 F.3d 1294, 1308 (Fed. Cir. 2010).  In order to make this determination, courts ask four questions: (1) the scope and content of prior art; (2) the level or ordinary skill in the art; (3) the differences between the prior art and the claimed invention; and (4) the extent of any objective indicia of non-obviousness. <u>Id.</u>; <u>see also Advanced Design Display Systems, Inc. v. Kent State University</u>, 212 F.3d 1272, 1284-85 (Fed. Cir. 2000).

In the context of design patents, the Federal Circuit has held that the inquiry is whether one skilled in the prior art would have combined the teachings of that art "to create the same overall visual appearance." <u>Durling v. Spectrum Furniture Co., Inc.</u>, 101 F.3d 100 (Fed. Cir. 1996), <u>distinguished on other grounds by Egyptian Goddess, Inc. v. Swisa</u>, 543 F.3d 665, 679

(Fed. Cir. 2008).  To undertake that inquiry, the Federal Circuit has outlined a two-step process.  First, the Court must find a "primary reference"--that is, something in existence, the design characteristics of which are basically the same as the claimed design."  Durling, 101 F.3d at 103.  Second, after that primary reference has been located, additional references may be used "to modify it to create a design that has the same overall visual appearance of the claimed design."  Id.  Once the court has undertaken that comparison, then it must undertake the "ordinary observer test, not the view of one skilled in the art."  Titan Tire Corp., 566 F.3d at 1381-82.

The ordinary observer test for obviousness is that same as that for patent infringement:  they are flip sides of one another.  See Egyptian Goddess, Inc., 543 F.3d at 678.  That test asks whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design.  See id. at 677-78.

Movants assert that the Woolrich Penta and Lauren Hill slippers constitute marketplace prior art that this Court should consider as the primary reference against which the obviousness of the '183 patent is measured.  They also note that those two slippers were not before the PTO at the time that it was considering the defendant's application of the '183 patent.  Accordingly, this Court can take that fact into consideration

when determining how much deference the PTO's decision should be
given.  See i4i Ltd. P'ship, 131 S. Ct. at 2252.

The overall visual effect created by the Woolrich prior art
is the same overall visual effect created by the '183 patent.
To an ordinary observer, they are the same slippers.  The only
difference between the slippers relates to the sole of the
slippers, which is quite minor in the context of the overall
slipper.  Even if, however, this Court were to find that the
differences in the sole design were of any note, the design of
the dots on the '183 patent are anticipated by the dots on the
two design patents that were before the PTO during the
prosecution of the patent:  D566,934 and D540,517.

Since both of those design patents were noted on the face
of the '183 patent, and since both relate to slippers, they
would have been available to a slipper designer skilled in the
art--and would have easily suggested the addition of "dots" to
the sole of a slipper.  Combining the dots shown on those two
design patents with the prior art in the Woolrich slipper would
have been obvious to any designer.  That combination would have
created a slipper with a virtually identical visual impression
as Buyer's Direct's '183 patent.

C.   The '183 Patent is Primarily Functional

Design patents only protect ornamental features--not
functional aspects of an invention.  OddzOn Prods. v. Just Toys,

Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997).  When a design

patent's primary features are functional rather than ornamental,

it may be declared invalid.  See, e.g., PHG Techs., LLC. V. St.

John Cos., Inc., 469 F.3d 1361, 1366 (Fed. Cir. 2006).

     A review of the drawings on the face of the '183 patent as

well as a review of the physical slipper attached as Exhibit 2

to the Declaration of David A. Boag ("Boag Decl.") (Dkt. No. 38)

leaves little doubt that all major characteristics of this

slipper are functional.  It is a slipper that completely covers

the foot; that is a functional design to provide complete foot

warmth and protection.  That's the primary function of

innumerable slippers.  The slipper at issue has a fuzzy interior

for comfort--again, a functional characteristic that many

slippers share.  The fuzz overflows can be characterized as

"ornamental," but can also be characterized as functional--i.e.,

as providing an extra element of comfort.  It certainly cannot

be said that the slipper shown in the '183 patent drawings is

"primarily ornamental."  It is therefore invalid for that reason

as well.  See Arminak & Assoc., Inc. v. Saint-Gobain Calmar,

Inc., 501 F.3d 1314, 1319 (Fed. Cir. 2007), cert. denied, 553

U.S. 1102 (2008).[2]

---

[2] Upon close inspection, it might be the case that the particular arrangement
of the non-skid dots on the sole of Buyer's Direct's slipper could be
considered "ornamental"--though since those are typically used while walking
and not seen, it is analytically hard to get one's head around an ornamental
design whose potentially unique look is most apparent to the floor.

D.   The Expert Opinion and Consideration of the Prior Art

Buyer's Direct has submitted a declaration from Lance Rake (Dkt. No. 39), a proposed expert in industrial design, as supportive of its claim that there are sufficient differences between the Woolrich prior art and the '183 Patent to defeat the obviousness test.  In the context of the "ordinary observer" test, the Court is not concerned with whether an expert could find differences, but rather whether an ordinary observer would find substantial similarity.

As the Supreme Court stated more than one hundred years ago, "To constitute infringement of a patent for a design, it is not essential that the appearance should be the same in the eye of the expert. The test of a patent for a design is the eye of an ordinary observer . . . ."  Gorham Co. v. White, 81 U.S. 511, 527 (1871).  Specifically regarding differences pointed out by an expert, the Court said that if that was always required "there never could be piracy of a patented design, for human ingenuity has never produced a design, in all its details, exactly like another, so like, that an expert could not distinguish them."  Id.  Thus, Mr. Rake's declaration does not get Buyer's Direct over the hurdle of the ordinary observer test.

III. THE TRADE DRESS CLAIM

Movants also seek to dismiss Buyer's Direct's trade dress claim under Fed. R. Civ. P. 12(c).  Motions under Rule 12(c) of the Federal Rules of Civil Procedure are analyzed similarly to motions brought under Rule 12(b)(6).  Nogbou v. Mayrose, 400 F. Appx. 617, 619 (2d Cir. 2010) (summ. order); Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).  Accordingly, this Court assumes the truth of the allegations in the counterclaim, draws all inferences in favor of the counterclaimant, and seeks to determine whether the allegations state a plausible claim.  Patel, 259 F.3d at 126.

Movants' primary assertion, with which this Court agrees, is that in order to state a claim for trade dress infringement, a plaintiff must the specific characteristics  and scope of the trade dress at issue.  See Sherwood 48 Assoc. v. Sony Corp. of Am., 76 Fed. Appx. 389, 391 (2d Cir. 2003).  Buyer's Direct has failed to do so.  Mere conclusory reliance on the overall look of a product is insufficient to meet that requirement.  Nat'l Lighting Co., Inc. v. Bridge Metal Indus., LLC, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009).

Buyer's Direct's sole allegation in support of the characteristics and scope of its allegedly distinctive trade dress is that the slippers "have a distinctive, immediately recognizable overall look and feel that constitutes protectable

14

trade dress." (Countercl. ¶25; Third-party Compl. ¶ 44.) As set forth above, that is inadequate as a matter of law.

While the Court notes that there are some trade dress characteristics shared between High Point's slipper and the embodiments provided to the Court (Boag Decl. Exs. 2-3), that does not eliminate the pleading deficiency. At this stage of the litigation, the Court is unwilling to entertain an amendment to the pleadings and therefore dismisses this claim with prejudice.

CONCLUSION

For the aforementioned reasons, plaintiff's and third party defendants' motion for summary judgment as to invalidity is GRANTED; plaintiff's and third-party defendants' motion for judgment on the pleadings with respect to defendant's trade dress claim is also GRANTED.

The Clerk of the Court is directed to terminate the motion at Docket No. 31 and to terminate this action.

The Clerk of the Court is further directed to enter a judgment in favor of plaintiff High Point Design LLC and third party defendants Meijer, Inc., Sears Holdings Corporation, and Wal-Mart Stores, Inc. declaring the '183 patent invalid and

thus, not infringed by High Point Design LLC or Meijer, Inc.,
Sears Holdings Corporation, and Wal-Mart Stores, Inc.


     SO ORDERED:

Dated: New York, New York
      May 15 , 2012


                          _____
                              KATHERINE B. FORREST
                      United States District Judge