```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/26/2014_
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HIGH POINT DESIGN LLC,                          :
                                                :
        Plaintiff,                             :          11 Civ. 4530 (KBF)
                                                :
       -v-                                      :          OPINION & ORDER
                                                :
BUYER'S DIRECT INC.,                            :
                                                :
        Defendant.                             :
------------------------------------------------------------------ X
BUYER'S DIRECT INC.,                            :
                                                :
        Counterclaim Plaintiff/                :
        Third-Party Plaintiff,                 :
                                                :
       -v-                                      :
                                                :
HIGH POINT DESIGN LLC,                          :
                                                :
        Counterclaim Defendant,                :
                                                :
MEIJER, INC., SEARS HOLDINGS                    :
CORPORATION, AND WAL-MART STORES,               :
INC.,                                           :
                                                :
        Third-Party Defendants.                :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

      Defendant Buyer's Direct Inc. ("defendant" or "BDI") owns a design patent for a fuzzy slipper. The patent is entitled "Slipper" and consists of a single claim: "the ornamental design for a slipper, as shown and described." (Patent No. US D598, 183 S (the '183 Patent), Declaration of Robert M. Isackson ("Isackson Decl."), Ex. 1, dated November 25, 2013, ECF No. 86-1.) Defendant also makes a slipper it contends (and to the Court's surprise, no party disputes) is a commercial embodiment of the '183 Patent, "Snoozies."

1

Plaintiff High Point Design LLC ("plaintiff" or "High Point"), and third-party defendants Meijer, Inc., Sears Holdings Corporation, and Wal-Mart Stores, Inc. (collectively "third-party defendants"), sell a fuzzy slipper known as the "Fuzzy Babba." On July 1, 2011, High Point commenced the underlying lawsuit seeking a declaratory judgment of patent invalidity and non-infringement. (See Compl. ¶¶ 20-33, July 1, 2011, ECF No. 1.) Defendant BDI counterclaimed for infringement of the '183 Patent and of protectable trade dress. (BDI Ans., Dec. 29, 2011, ECF No. 13.)

On May 15, 2012, this Court granted summary judgment to plaintiff on the basis that the '183 Patent was obvious – and therefore invalid. (5/15/12 Mem. & Order, May 15, 2012, ECF No. 27.) The Court also dismissed BDI's trade dress claim on the basis that BDI failed to specify characteristics and the scope of the trade dress at issue. (Id.) Plaintiff appealed. (ECF No. 50.) On September 11, 2013, the Federal Circuit reversed and remanded the Court's decision on the basis that the Court applied the "ordinary observer" test to the question of obviousness in the context of a design patent, whereas it should have applied the "ordinary designer" test. High Point Design LLC v. Buyer's Direct, Inc., 730 F.3d 1301, 1313 (Fed. Cir. 2013). (See also ECF No. 53.) As to the trade dress claim, the Federal Circuit instructed that the Court should consider the motion for leave to amend pursuant to Rules 15 and 16 of the Federal Rules of Civil Procedure and to set forth its rationale as to why "good cause did not exist under the circumstances here." High Point Design LLC, 730 F.3d at 1318. The case came back before the Court and the parties embarked on another round of motion practice.

Now pending before this Court are six motions: plaintiff and third-party defendants have moved for summary judgment or dismissal of BDI's claims on the grounds that the '183 Patent: (1) is invalid due to obviousness, when using the ordinary designer standard; (2) is invalid due to its anticipation by prior art, using the ordinary observer test; and (3) is not infringed upon by the Fuzzy Babba slipper, using the ordinary observer test. They also allege that the trade dress claim is facially defective and should be dismissed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendant BDI has moved for leave to amend its trade dress claim and also for discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure before this Court renders a decision on the pending motions for summary judgment.

For the reasons set forth below, the Court GRANTS summary judgment to plaintiff and third-party defendants as to anticipation and thus renders the patent invalid. For that reason, and based on the ordinary observer standard, the Court finds that there is no triable issue of fact as to infringement. The Court need not and declines to rule on the question of obviousness – the first two rulings are sufficient to dispose of the patent claims in this case. There is no discovery necessary to resolution of the invalidity or infringement motions; the Court therefore DENIES defendant's motion for discovery pursuant to Rule 56(d).

The Court DENIES defendant's motion to amend its trade dress claim on the basis that such motion is untimely: the parties agreed to a case management schedule that provided for all pleading amendments to occur by a date certain. That date came and went; only after it had passed, and after plaintiff made a

dispositive motion against those pleadings, did defendant seek leave to amend. On these particular facts, the motion comes too late. Finally, the trade dress claim as pled is deficient as a matter of law and must be dismissed; plaintiff and third-party defendants' motion in that regard is therefore GRANTED.

I. RELEVANT FACTS AND BACKGROUND

The following facts and background are undisputed or indisputable. Any competing inferences are drawn in favor of the non-movant. See Geneva Pharm. Tech. Corp. v. Barr Labs. Inc., 386 F.3d 485, 495 (2d Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

On January 22, 2009, Marshal P. Bank, BDI's President, filed an application for a design patent entitled "Slipper." (Pl.'s R. 56.1 Stmt. No. 1; Def.'s R. 56.1 Stmt. No. 1; Isackson Decl., Ex. 1.) On August 18, 2009, for reasons the Court frankly cannot fathom, the Patent and Trademark Office ("PTO") granted the application and issued the '183 Patent for said slipper. (See Isackson Decl., Ex. 1.) The slipper design appears to be like that of many slippers which have been commercially available for years – the Court focuses here on the two examples submitted by plaintiff: the Woolrich Penta and the Laurel Hill slippers.

Patent '183 consists of the single claim (as set forth above) and the following eight figures:



On June 11, 2011, defendant BDI (owner of the '183 Patent by assignment) sent a letter to plaintiff High Point alleging that it was infringing the '183 Patent. (Pl.'s R. 56.1 Stmt. No. 4; Def.'s R. 56.1 Stmt. No. 4.)  Plaintiff High Point quickly brought this lawsuit for declarations of invalidity and non-infringement.  (See Compl. ¶¶ 20-33.)  BDI – positioned as a defendant – then counterclaimed for a finding of infringement of both the '183 Patent and what it asserted was protectable trade dress.  (See BDI Ans.)  On February 6, 2012, in its Answer to the counterclaims, plaintiff and now counterclaim-defendant, High Point, asserted, inter alia, that the "look and feel of [counterclaim] plaintiff's SNOOZIES slippers does not constitute protectable trade dress" and that BDI had failed to state a claim.

5

(Reply of Plaintiff/Counterclaim Defendant High Point Design LLC ("Pl.'s Reply") ¶¶ 17, 21, Feb. 6, 2012, ECF No. 20.) At a pre-trial conference held on February 16, 2012, High Point requested leave to file one or more motions it asserted would be dispositive of the entire case on the basis of the pleadings. The Court set March 20, 2012 as the deadline to file such motion(s). (See 2/16 Scheduling Order, Feb. 16, 2012, ECF No. 28.)

On February 28, 2012, the parties agreed to and jointly submitted a proposed case management and scheduling order ("CMO"). (Stipulation & Schedule, Feb. 28, 2012, ECF No. 29.) The CMO established March 16, 2012 as the last date upon which the parties could amend their pleadings. (See id. at 2.) Thus, not later than February 28, 2012, BDI knew (1) High Point believed its trade dress pleadings were deficient; (2) High Point intended to move against the pleadings as to all claims by March 20, 2012; and (3) March 16, 2012 was the last date upon which BDI could file any amended pleadings.

High Point and the third-party defendants have pointed to two slippers sold by Woolrich in 2006 and 2007 as prior art references relevant to this Court's consideration of invalidity. One of the Woolrich slippers, the Penta, appeared in a catalogue (and was thus commercially available) in 2006. (Isackson Decl., Ex. 2.) The second Woolrich slipper, the Laurel Hill, appeared in a catalogue in 2007. (Id.) Both show remarkable resemblance to the '183 Patent figures.

Side-by-side comparisons of each of these two slippers against the slipper shown in the '183 Patent are included as Exhibit 3 of the Isackson Declaration. (See Isackson Decl., Ex. 3.)

A side by side comparison of the slipper shown in the '183 Patent and the Fuzzy Babba slipper is contained in Exhibit 4 of the Isackson Declaration. (See Isackson Decl., Ex. 4.)

## II.   APPLICABLE LEGAL STANDARDS

### A.   Summary Judgment Standard

Summary judgment may be granted where there are no triable issues of fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A triable issue of fact must be an issue of material fact – it must be more than a scintilla of evidence or evidence that is merely colorable. See Anderson, 477 U.S. at 249-50. In determining whether there is an issue of material fact, a court must view the evidence in the light most favorable to the nonmoving party. Lockwood v. American Airlines, Inc., 107 F.3d 1565, 1569 (Fed. Cir. 1997) (citation omitted).

On a motion for summary judgment, the Court is neither allowed to weigh the evidence nor make credibility findings. Anderson, 477 U.S. at 249; Jeffreys v. City of New York, 426 F.3d 546, 553-54 (2d Cir. 2005) (citations omitted).

### B.   Leave to Amend

It is within the sound discretion of this Court to grant or deny leave to amend. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). Rule 15(a) of the Federal Rule of Civil Procedure, a Court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Undue delay and prejudice to the opposing party, along with futility and bad faith, are among the

7

reasons a court may properly deny leave to amend. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

When a scheduling order governs amendments to the pleadings, Rule 15 must be interpreted against the provisions of Rule 16(b), which state that a scheduling order "shall not be modified except upon a showing of good cause." Holmes v. Grubman, 568 F.3d 329, 334-35 (2d Cir. 2009) (internal quotation marks and citation omitted). "As the Eleventh Circuit has noted, '[i]f we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.'" Parker, 204 F.3d at 340 (quoting Sosa v. Airport Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (per curium)).

In assessing whether good cause exists, "the primary consideration is whether the moving party can demonstrate diligence." Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 244 (2d Cir. 2007) (explaining that diligence is the primary but not only consideration); Holmes, 568 F.3d at 334-35 ("Whether good cause exists turn on the diligence of the moving party.") (internal quotation marks and citation omitted). That is, despite having exercised diligence, "the applicable deadline could not have reasonably been met." Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (citing Sokol Holdings, Inc. v. BMB Muani, Inc., 05 Civ. 3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) (internal citation omitted)); see also Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009). The Court should also consider

8

whether the movant had notice of the deficiency of its claim and weigh the prejudice between the parties. See, e.g., High Point, 730 F.3d at 1319.

  C. Patent Invalidity and Infringement

Patents are entitled to a statutory presumption of validity. 35 U.S.C. § 282(a) ("A patent shall be presumed valid."); PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1303 (Fed. Cir. 2008) (citing Ralston Purina Co. v. Far-Mar-Co., Inc., 772 F.2d 1570, 1573 (Fed. Cir. 1985)). Such presumption may only be overcome by clear and convincing evidence. Microsoft Corp. v. i4i Ltd P'Ship, – U.S. – , 131 S.Ct. 2238, 2242 (2011); see also Centcor Ortho Biotech, Inc. v. Abbott Labs., 636 F.3d 1341, 1347 (Fed. Cir. 2011) (citation omitted); High Concrete Structures, Inc. v. New Enter. Stone & Lime Co., 377 F.3d 1379, 1382 (Fed. Cir. 2004) ("A patent is presumed valid, 35 U.S.C. § 282, and can be proved invalid only by clear and convincing evidence."). One way of overcoming the presumption of validity is by presenting clear and convincing evidence that prior art in fact anticipated a patented invention. 35 U.S.C. § 102(a)(1) ("A person shall be entitled to a patent unless [ ] the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention . . . .").

Infringement occurs when a third party, without permission or other entitlement, manufactures, copies, uses or distributes that which has been validly patented. 35 U.S.C. § 271 ("Except as otherwise provided . . ., whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent.").

For more than a century, courts have held that the same test must be used to determine whether an invention has been infringed or anticipated because "that which infringes, if later, would anticipate, if earlier." International Seaway Trading Corp. v. Walgreens Corp., 589 F.3d 1233, 1239 (Fed. Cir. 2009) (citing, inter alia, Peters v. Active Mfg. Co., 129 U.S. 530, 537 (1889)).

Courts employ the same "ordinary observer" test to determine whether a patent has been anticipated or infringed. See id. at 1239-40 (discussing why the same test must be applied for both infringement and anticipation). This test is derived from that set forth by the Supreme Court in 1871 in Gorham Co. v. White, 81 U.S. 511, 528 (1871):

> [I]f, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

The Court concluded:

> [W]hatever differences there may be between the plaintiffs' design and those of the defendant in details of ornament, they are still the same in general appearance and effect, so much alike that in the market and with purchasers they would pass for the same thing . . . .

Id. at 531. An ordinary observer is not an expert: an expert cannot be deceived because his or her attention to detail would prevent deception; in contrast, an ordinary observer can be. See Gorham Co., 81 U.S. at 527-28. "To show infringement under the proper test, an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same

10

as the patented design." Crocs, Inc. v. International Trade Comm'n, 598 F.3d 1294, 1303 (2010); see also Amini Innovation Corp. v. Anthony Ca., Inc., 439 F.3d 1365, 1371 (Fed. Cir. 2006) (citation omitted); International Seaway Trading Corp., 589 F.3d at 1239-40 (explaining that the ordinary observer is "deemed to view the differences between the patented design and the accused product in the context of the prior art") (internal quotation marks and citation omitted); Hutzler Mfg. Co. v. Bradshaw Int'l, Inc., No. 11 Civ. 7211, 2012 WL 3031150, at *6 (S.D.N.Y. July 25, 2012) (citing cases) (explaining that an ordinary observer is someone who has purchased or shopped for a similar product in the past).

In applying the ordinary observer test, courts do not require a detailed verbal construction. Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679 (Fed. Cir. 2008) ("As the Supreme Court has recognized, a design is better represented by illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'") (quoting Dobson v. Dornan, 118 U.S. 10, 14 (1886)). In Egyptian Goddess, the Federal Circuit explained the ordinary observer test as follows:

> 'When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer.'

International Seaway Trading Corp., 589 F.3d at 1240 (quoting Egyptian Goddess, 543 F.3d at 676). The test focuses on the overall design; minor variations are

insufficient to preclude a finding of anticipation.  Id. at 1240 (explaining that the "minor variations in the shoe are insufficient to preclude a finding of anticipation because they do not change the overall visual impression of the shoe.").  "The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another."  Id. at 1243.  Minor differences do not, therefore, prevent a finding of invalidity due to anticipation.  Id.; see also Crocs, Inc., 598 F.3d at 1303.

Finally, proper application of the ordinary observer test requires that the accused design be compared to the claimed design, not to the commercial embodiment.  Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 990 (Fed. Cir. 1993) (citation omitted).

D.  Protectable Trade Dress

According to the Second Circuit, a party must satisfy four pleading requirements to make out a claim for trade dress infringement that involves appearance of a product under Section 43 of the Lanham Act.  See, e.g., National Lighting Co. v. Bridge Metal Indus., LLC, 601 F. Supp. 2d 556, 560-61 (S.D.N.Y. 2009) (citations omitted).  One of those requirements is that the claim specify the character and scope of the allegedly protectable trade dress.  See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 117 (2d Cir. 2001) (quoting Landscape Forms, Inc. v.

Columbia Cascade Co., 113 F.3d 373, 380 (2d Cir. 1997)); Sherwood 48 Assocs. v. Sony Corp. of Am., 76 Fed. App'x 389, 391 (2d Cir. 2003) (citations omitted).[1]

III.   ANALYSIS OF INVALIDITY AND INFRINGEMENT

The Court's application of the ordinary observer test makes it clear that the '183 Patent was anticipated by the Woolrich slippers.

To an ordinary observer, the '183 Patent is the design of a slipper with a formed body, a protrusion of fuzz or fluff, and a sole with some solidity. The outside of the slipper appears durable and looks to be made of a relatively tough material; the inside looks soft, plush, and made of a warm material. The sole appears to be fairly thick and looks sturdy.

An examination of the Laurel Hill from the perspective of an ordinary observer reveals that it has the same characteristics. The slipper has a structured body, a soft-looking fluff surrounding the opening of the slipper, and a sole that appears durable and fairly thick. Woolrich's Laurel Hill appears to be the commercial embodiment of the design, and yet this slipper appears in a catalogue well prior to the issuance of the Patent.

---

[1] A party must satisfy the following four requirements to adequately plead a trade dress claim:
> (1) plaintiff must allege 'the claimed trade dress is non-functional;' (2) plaintiff must allege 'the claimed trade dress has secondary meaning;' (3) plaintiff must allege 'there is a likelihood of confusion between the plaintiff's good and the defendant's;' and (4) plaintiff must 'offer a precise expression of the character and scope of the claimed trade dress.'

National Lighting Co., 601 F. Supp. 2d at 560-61 (quoting Sherwood 48 Assoc, 76 Fed. App'x at 391).

It is true that a close study of the two reveals differences.  For instance, BDI's proffered expert, Lance G. Rake, points out small differences, including the size of the "sidewall," the curvature differences in the opening and at the toe, and whether the foot opening is the same size.  But this close study is that of an expert, and does not reflect the attention of an ordinary observer.  An ordinary observer would not find that the curves of the opening or at the toe alter the overall visual effect – they represent an insignificant variation.  So too with each of the other differences identified.  The Laurel Hill is not a copy of the '183 Patent – and the law does not require that level of identicality for a finding of anticipation; rather, minor differences in design to not defeat a finding of anticipation.  <u>International Seaway Trading Corp.</u>, 589 F.3d at 1243.

Separate and apart from the Laurel Hill, Woolrich's Penta slipper also anticipates the '183 Patent.  This is unsurprising given the lack of novelty of either slipper.  The Penta conveys the visual effect of a slipper, the body and sole of which have some defined shape and solidity but which has a protrusion of fluff or fuzz emanating from the foot opening.  The visual effect is, again, essentially the same visual effect conveyed by the '183 Patent.

Indeed, an ordinary observer looking at either the '183 Patent or the Penta (or the Laurel Hill for that matter) would imagine a consumer holding onto the sturdy outside of the slipper and sliding a foot into the slipper's soft inside.  An ordinary observer would anticipate based on the look of the slipper that its shape would not change (owing to the footwear's structured shape); the look of the material on the inside of the material gives the impression that it would be soft.

While here, too, Rake identifies differences, those differences are apparent only upon study by a proffered expert. (Such an expert is, of course, unnecessary and irrelevant to the ordinary observer test.) Indeed, the differences between the Penta and the '183 Patent are even fewer than those with the Laurel Hill. The curvature differences between the Penta and '183 Patent at the toe are almost indistinguishable; so too with respect to the alleged "side wall" differences. The foot openings have some slight variations in shape – but they do not convey a different visual effect as to the designs as a whole.

In short, the evidence of the two Woolrich slippers is clear and it is convincing. Each of the two Woolrich slippers anticipate, by two or three years, the design of the '183 Patent. How and why the '183 Patent ever issued in the first instance given its lack of novelty is known only to the PTO; nevertheless, that patent grant is without real force because the Court finds the patent invalid under 35 U.S.C. § 102.

In the absence of a valid patent, there can be no claim for infringement. High Point is entitled to summary judgment as to its claim for declaratory relief on this basis alone. However, even were the Court to ignore the clear and convincing evidence of anticipation discussed above, there is still no triable issue as to infringement.

The infringement analysis uses the same ordinary observer test as that for anticipation. International Seaway Trading Corp., 589 F.3d at 1240. However, the Court here compares the alleged infringing Fuzzy Babba slipper to the '183 Patent. The two convey significantly different visual effects.

15


Fuzzy Babba Slipper


'183 Patent
FIG. 4
FIG. 6

The Fuzzy Babba conveys the visual effect of an entirely soft and malleable body with an indistinguishable sole; it is soft and malleable all around. In contrast, the visual effect of the '183 Patent is of a formed body and sole with some solidity; and a body distinct from the sole. It is true that both the '183 Patent and the Fuzzy Babba have protruding fuzz or fluff – but that in and of itself is not enough to render the two designs substantially similar. There is no way to avoid the fact that the Fuzzy Babba's appearance evokes a soft, gentle image, while the '183 Patent appears robust and durable. A consumer would not confuse the two – there is no triable issue.[2]

Accordingly, there is no question of fact concerning whether the Fuzzy Babba infringes on the '183 Patent – it does not.

IV.   THE MOTION TO AMEND

BDI's second counterclaim asserts infringement of protectable trade dress. (BDI Ans. ¶¶ 24-34.) On February 6, 2012, High Point answered that claim and

---

[2] The Court notes that the parties have presented BDI's "Snoozie" as a comparator against the Fuzzy Babba's. In fact, the Snoozie itself has a different visual appearance from the '183 Patent. It is itself already down the spectrum of similarity – and does not appear to be a faithful replica of the patented design. Thus, comparing the Fuzzy Babba to the Snoozie results in further movement away from the patented design. When the Fuzzy Babba is compared to the figures in the patent, the visual effect contrasts between the two are stark indeed. Comparisons to the Snoozie are not determinative of this motion.

16

asserted that the "look and feel of [counterclaim] plaintiff's SNOOZIES slippers does not constitute protectable trade dress" and that BDI had failed to state a claim. (Pl.'s Reply ¶¶ 17, 21.)  Thus, as of February 6, 2012 – prior to the time that the parties had agreed to a CMO and schedule governing amendments to pleadings – BDI was on explicit notice of an asserted deficiency of its trade dress claim.

Thereafter, on February 16, 2012, High Point made clear its intention to move against the pleadings.  At the initial conference, High Point requested leave to file one or motions dispositive of all claims on the face of the pleadings.  The Court set March 20, 2012 as the date for such a motion to be filed.  (ECF No. 28.)  Here again, on February 16, 2012, BDI was made aware that High Point intended to move against its trade dress claim (since its motion was to be dispositive of all claims), and that it would do so by March 20, 2012.

Thereafter, the parties submitted a jointly proposed CMO.  (ECF No. 29.) That CMO established March 16, 2012 as the date by which either party could amend its pleadings.  (ECF No. 29.)  Thus, as of this date, BDI knew precisely when it needed to amend its trade dress claim if it chose to do so.

Yet, March 16, 2012 came and went, with no amendment by BDI; March 20, 2012 arrived and unsurprisingly, High Point did that which was by this time foretold:  it moved, <u>inter alia</u>, against BDI's trade dress claim.  It did so on precisely that basis which it had set forth in its answer, that pursuant to clear Second Circuit precedent, BDI was required (as stated above) to:  (1) "offer 'a precise expression of the character and scope of the claimed trade dress;'" (2) allege that "the claimed trade dress is non-functions;" (3) allege that "the claimed trade dress has secondary

17

meaning;" and (4) allege that "there is a likelihood of confusion between the plaintiff's good and the defendant's." Sherwood 48 Assoc., 76 Fed. App'x at 391 (quoting Landscape Forms, Inc., 113 F.3d at 381 and citing Yurman Designs, Inc., 262 F.3d at115-16). BDI's one-paragraph trade dress claim fails to comply with this standard.

BDI now seeks leave to amend. In light of the CMO in this case, the Court asks whether pursuant to Rule 16, BDI demonstrated sufficient diligence to demonstrate good cause. As the procedural history demonstrates, it did not. BDI ignored High Point's explicit notice – the seriousness of which could easily have been confirmed by research into the Second Circuit standard for trade dress claims – that it believed BDI's trade dress claim was deficient and it intended to move against it. It did nothing. Time passed and the date by which the parties agreed amendments could be made came and went. Shortly thereafter, High Point made its motion. (ECF No. 31.) It that motion, it did no more than put words and case cites around that which it had previously set forth in its second counterclaim. High Point cited cases that left no doubt the trade dress claim could not survive as pleaded. (See Memorandum of Law in Support of Combined Motion by Plaintiff/Counterclaim Defendant and by Third-Party Defendants for (1) Summary Judgment with Respect to Patent Validity and Infringement, Pursuant to Rule 56(b), F.R.C.P., and (2) Judgment on the Pleadings with Respect to Trade Dress Allegations, Pursuant to Rule 12(c), F.R.C.P. ("High Point Mem.") at 20-25, Mar. 20, 2012, ECF No. 33.)

BDI could not reasonably have been surprised by High Point's argument; it was on explicit notice of it. That BDI perhaps overlooked High Point's affirmative defenses is not a basis for ignoring the CMO – if this were the case, the CMO would mean nothing and an important tool for case management would be lost.

On the facts before this Court, it would be plainly inequitable to allow BDI to commit to dates in a CMO, thereafter ignore them, and then be given another chance. This works an injustice in terms of orderly case management and also would require High Point to continue to litigate a case which clearly is subject to dismissal in its entirety.

In denying BDI's motion to amend, the Court does not rely on the fact that several years have passed since the overall inception of this lawsuit. As all parties are aware, a portion of that time is attributable to the appeal to the Federal Circuit and remand. Rather, this Court has reviewed BDI's motion as if it had been decided on the merits in May of 2012.

V.    CONCLUSION

For the reasons set forth above, plaintiff High Point and third-party defendants' motions for summary judgment on invalidity due to anticipation and non-infringement are GRANTED. The Court does not reach the motion for summary judgment on obviousness in light of these rulings. Plaintiff and third-party defendants' motion for dismissal of the trade dress claim is GRANTED. Defendant's motions for discovery and for leave to amend are DENIED.

The Clerk of the Court is directed to terminate the motions at Docket Nos. 74, 78, 79, and 98, to enter judgment for plaintiff High Point and third-party defendants on all claims, and to terminate this action.

SO ORDERED.

Dated:   New York, New York
         March 26, 2014

                                          _____
                                          KATHERINE B. FORREST
                                          United States District Judge